UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIEBOLD NIXDORF INCORPORATED, | ) | CASE NO. 5:20-cv-1135 |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| QSI, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

Before the Court is the motion of plaintiff/counterclaim defendant Diebold Nixdorf, Inc. ("Diebold") to dismiss the counterclaim filed by defendant/counterclaim plaintiff QSI, Inc. ("QSI"). (Doc. No. 10 ("Mot.").) QSI filed an opposition brief (Doc. No. 14 ("Opp'n")) and Diebold filed a reply (Doc. No. 16 ("Reply")). For the reasons set forth herein, the motion is denied in part and granted in part.

**I. Background**

On May 26, 2020, Diebold filed a one-count complaint against QSI alleging that QSI breached a license agreement entered into pursuant to a settlement in an earlier-filed civil case,[1] under which QSI was to service Diebold's automated teller machines ("ATMs") for a term of four years. (Doc. No. 1 ("Compl.") ¶¶ 9–11.) In particular, the complaint alleged that, under the license agreement, "QSI agreed to pay fees to [Diebold] on a quarterly basis after April 1, 2018 based upon the number of [Diebold] ATMs being serviced as of the date of payment[.]" (*Id*. ¶ 12

---

[1] *See Diebold Inc., et al. v. QSI, Inc.*, No. 5:16-cv-2481-KBB (N.D. Ohio) (complaint for copyright infringement; misappropriation of trade secrets; breach of contract).

(referring to the fees as "royalties" or "royalty payments").) Diebold alleges that, as of April 17, 2019, QSI owed Diebold "[r]oyalties in the amount of $83,190 for 2018[,]" and that QSI "[had] not reported any [r]oyalties for 2019 or 2020" or "ma[d]e any [r]oyalty [p]ayments for 2018, 2019, or 2020 in breach of the [license agreement]." (*Id.* ¶¶ 14–15.) Diebold further alleges that it "has performed all of its obligations" under the license agreement. (*Id.* ¶ 18.)

On July 8, 2020, QSI filed its answer (Doc. No. 7 ("Answer")), along with a counterclaim (Doc. No. 7 ("Countercl.")). Other than admitting the prior lawsuit and the settlement agreement, including the license agreement (Answer ¶¶ 4–6), QSI denies most of the other allegations in the complaint, including that it breached any contract (*Id.* ¶ 1). QSI asserts several affirmative defenses, including the "third defense" that Diebold's breach of contract claim "is barred in whole or in part on the basis that [Diebold] committed the first material breach by failing to substantially perform its obligations under the [l]icense [a]greement, including but not limited to failing to provide QSI with essential tools necessary for QSI to work as a service partner of Diebold, which was the essential purpose of the [license agreement]." (Answer ¶ 12.)

QSI asserted a counterclaim, which appears to be a claim for breach of contract coupled with a claim for breach of the covenant of good faith and fair dealing, the gravamen of which is that, because Diebold allegedly "failed to provide, share, and make available tools, keys, devices, software, hardware, and programs, … which are essential in order for QSI to perform service, maintenance, and repair of the ATMs and related equipment[,]" Diebold "has materially breached its obligations[,]" and caused QSI to incur various costs. (Countercl. ¶¶ 5, 7, 10.)

On July 29, 2020, Diebold filed its answer to the counterclaim (Doc. No. 9), along with the instant motion to dismiss. In its motion, Diebold argues that QSI's counterclaim fails to state a claim for breach of the license agreement because QSI has "only pled three of the four elements

2

of a prima facie breach of contract claim[.]" (Mot. at 64.[2]) In particular, Diebold argues that "QSI did not allege that it performed under the [l]icense [a]greement because it cannot do so — QSI failed to pay [r]oyalties to Diebold …, failed to provide quarterly accounting of license fees, and failed to notify Diebold of any purported breach." (*Id*.)

**II.    Discussion**

    **A.    Standard on a Motion to Dismiss**

A complaint (or in this case a counterclaim) must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 555, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts") (internal citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

    **B.    Analysis**

Diebold asserts that QSI's breach of contract counterclaim falls short of the pleading standard in *Iqbal* and *Twombly* and, absent a breach of contract claim, there can be no claim for breach of an implied covenant of good faith and fair dealing. Diebold also argues, correctly, that

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

QSI's counterclaim demand for punitive damages cannot stand under Ohio law governing breach of contract.

QSI argues in opposition that Diebold "blatantly ignores" QSI's allegation that Diebold committed the first material breach of the license agreement. (Opp'n at 101.) "[T]o the extent QSI did not 'perform' because it did not pay royalties, such performance was excused by Diebold's first material breach." (*Id*. at 111.) QSI has not attempted to refute Diebold's assertion that punitive damages are not available in a contract context.

A breach of contract exits where, without legal justification, a party fails to perform any promise that forms a whole or part of a contract. *Nat'l City Bank of Cleveland v. Erskine & Sons,* 110 N.E.2d 598 (1953), paragraph one of the syllabus. "A breach of a portion of the terms of a contract does not discharge the obligations of the parties to the contract, unless performance of those terms is essential to the purpose of the agreement." *Software Clearing House, Inc. v. Intrak, Inc.*, 583 N.E.2d 1056, 1060 (Ohio Ct. App. 1990) (citing cases). "The determination of whether a party's breach of a contract was a 'material breach' is generally a question of fact." *O'Brien v. Ohio State Univ.,* No. 06AP–946, 2007 WL 2729077, at *3 (Ohio Ct. App Sept. 20, 2007). In addition, "[p]ursuant to the doctrine of first material breach, [a] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Bash v. Laikin*, No. 5:13-cv-2371, 2014 WL 3842884, at *14 (N.D. Ohio Aug. 1, 2014) (quotation marks and citation omitted).[3]

---

[3] The court in *Bash* noted that the first material breach doctrine is an affirmative defense. There, the party had failed to timely assert the defense and was, therefore, barred from attempting to assert it on the eve of trial. That is not an issue here because QSI's third affirmative defense squarely asserts "first material breach" on the part of Diebold.

Diebold insists that "[t]his is not a matter of who committed the first material breach but rather of QSI's deficiently pleaded claim." (Reply at 125.) Although the counterclaim could have been more exactingly pleaded, the Court will allow it to stand at this stage. Time will tell if the evidence will support QSI's counterclaim.

### III. Conclusion

For the reasons set forth, Diebold's motion to dismiss QSI's counterclaim is denied as to the counterclaim and granted as to QSI's claim for punitive damages..

**IT IS SO ORDERED**.

Dated: November 9, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**